Miller, Appellee, *v.* Knight, Appellant.

(No. 609—Decided May 12, 1961.)

*Messrs. Peterson, Neatherton & Peterson,* for appellee.
*Messrs. Rush, Henderson & Rush,* for appellant.

Kerns, J. This is an action based upon alleged fraud in the procurement of two agreements executed by the parties while their divorce case was pending in the Court of Common Pleas of Greene County, Ohio.

One of the agreements involved a property settlement which was incorporated and made a part of the divorce decree dated October 31, 1958. It provided, among other things, that the plaintiff was to transfer all his right, title and interest in certain real estate to the defendant. According to the evidence, the value of such interest was about six hundred dollars ($600).

The second agreement, which was not made a part of the divorce decree, provides for expenses due to pregnancy, and stipulates as follows:

"1. Commencing on Saturday November 8, 1958, he will pay the weekly amount of $20, into the office of R. E. Gearhart, Clerk of the Court of Common Pleas, for the first party, said weekly payments of $20 to continue until April 1, 1959.

"2. Said second party agrees to pay existing medical expenses sustained by said first party in the present amount of $34 and said second party agrees to sustain any and such necessary physician and hospitalization expenses to be incurred incident to the birth of the child to said first party, anticipated to occur on or before April 1, 1959, to the extent of his medical and hospital insurance presently in effect. In the event said birth should be still born or occur prematurely prior to April 1, 1959, said second party agrees to continue said weekly payments of $20 for a period of 4 weeks subsequent to such event.

"3. By virtue of the above consideration, said William E. Miller and the Stella Knight Miller, covenant and agree that said William E. Miller shall not be responsible for any future support or maintenance of said child, subsequent to April 1, 1959."

The plaintiff maintained that the defendant fraudulently induced him to enter into the agreements by pretending to be pregnant, and the trial court rendered judgment ordering that the agreements be canceled and set aside. From that judgment, an appeal has been perfected to this court.

Both of the agreements were signed by the parties in the presence of their attorneys on October 29, 1958. At the time, the defendant was wearing a maternity dress and had with her a statement from a physician which states: "Diagnosis, (1) Early pregnancy est. 4 mos. (2) Respiratory infection." At the trial, the plaintiff did not seriously attack the validity of the statement or attempt to discredit the diagnosis thereon. The defendant testified that she miscarried in December 1958, without medical or other assistance. A physician countered with testimony to the effect that this was possible, but very unlikely.

We have read and re-read the bill of exceptions in a vain attempt to find any other evidence bearing upon the issue of whether or not the defendant was pregnant when the agreements were executed on October 29, 1958. This was the crux of the case and the basis of the alleged fraud.

The evidence reflects almost entirely upon the bizarre circumstances which developed after the alleged fraud was consummated. And although this evidence tends to prove that the defendant intended to perpetrate a fraud upon the plaintiff by representing that another's child belonged to him, there is no

evidence of damage in the record other than that claimed by the plaintiff as the result of the agreements signed on October 29, 1958. In order to constitute actionable fraud, both the fraud and damage must concur. Neither fraud without damage nor damage without fraud will support the action. See 24 Ohio Jurisprudence (2d), 634, Section 20.

The trial court made the following finding of fact and reiterated the statement verbatim in its judgment entry:

"The court was unable to determine from the evidence as to whether or not the defendant was pregnant at the time of the execution of these agreements."

After reviewing the record, we encounter similar difficulty and for the same reason—there is no evidence upon which a reasonable determination of this crucial issue might be based. But a determination as to whether or not the defendant was pregnant was indispensable to the judgment. How could the agreements be rescinded without such determination?

The essential elements of fraud which must be proved are set forth in 19 Ohio Jurisprudence, 335, Section 24, as follows:

"* * * First of all, there must be actual or implied representations or concealment of a matter of fact which relates to the present or past, and which is material to the transaction; secondly, the representation must be false; thirdly, the representation must be made with knowledge of its falsity, or with such utter disregard and recklessness as to whether it is true or false that knowledge may be inferred; fourthly, it must be made with the intent of misleading another into relying upon it; fifthly, this other person must have relied upon it with a right to so rely; and lastly, injury must have resulted as the consequence of such reliance. All of these ingredients must be found to exist, and the absence of any one of them is fatal to a recovery."

See, also, *Block* v. *Block*, 165 Ohio St., 365.

In the present case, the plaintiff was required to prove, among other things, that the defendant was not pregnant when the agreements were signed; that she knew that she was not pregnant; and that he relied upon the representation that she was pregnant. Unless or until he provides evidence to meet these requirements, his case must fail.

In our opinion, the evidence before us does not support the essential elements of an action for fraud. The judgment will,

therefore, be reversed and the cause remanded to the trial court for further proceedings according to law.

*Judgment reversed.*

CRAWFORD, P. J., and SHERER, J., concur.